# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## Johnson v. Commonwealth.

### January 26, 1911.

### Absent, Keith, P.

1. Homicide—*Indictment—Means of Death—Case at Bar.*—An indictment sufficiently charges the means by which life was extinguished, where, in one count it charges that the prisoner did strike, kick and beat deceased, Mary Thompson, upon the belly, stomach and back, and, in another count, that he did strike, push or knock the deceased down upon the floor, and that while lying there, he, upon the stomach, belly, back, legs and hands of her, the said Mary Thompson, did then and there strike, beat and kick, giving to the said Mary Thompson several mortal wounds, or one mortal wound.

2. Criminal Law—*Opening Statement of Prosecuting Attorney not Obligatory.*—The attorney for the Commonwealth is not obliged to make an opening statement in a criminal case. The statute (Code, section 4029-a) confers the right to do so, but does not make it obligatory on either party.

3. Homicide—*Evidence—Prior Chastisement of Pupil by Teacher— Harmless Error.*—On an indictment for murder, the fact that the prisoner, a school teacher, had, several months prior to the homicide, whipped the deceased and her brother, who were his pupils, but not excessively nor in excess of his authority as a teacher, is irrelevant and should have been excluded, but its admission was harmless where it is clear that it did not, and could not have injured the prisoner.

4. Homicide—*Evidence—Opinion of Physician as to Cause of Death.*— A physician, having testified that he made a *post mortem* examination of a child with whose murder the prisoner is charged, and that he found her bladder in a ruptured condition, and that in his opinion the rupture of the bladder was the cause of her death, and, further, that he found an abrasion of the skin on the abdomen of the deceased over the region of the bladder, may be asked: "Was the force that caused the external abrasion, in your opinion, the same force that caused the rupture of the

bladder?"  The subject of injury was one about which the
medical expert could speak more advisedly than any other, and
such evidence is permissible where peculiar skill and judgment
is necessary to elucidate a particular subject.

5.  Witnesses—*Capacity of Infant—Obligation of an Oath—Case at
Bar.*—Where a witness is objected to on the ground that his
tender years makes him incapable of understanding the obliga-
tion of an oath, the question of his competency is one addressed
to the sound judicial discretion of the court.  In the case at
bar, the witness was a colored boy nine years old, and the evi-
dence shows that the discretion exercised by the trial court in
admitting his testimony was not abused.

Error to a judgment of the Circuit Court of Westmoreland
county.

*Affirmed.*

The opinion states the case.

*R. C. Mayo* and *Joesph W. Chinn, Jr.*, for the plaintiff in
error.

*Samuel W. Williams, Attorney General*, for the Common-
wealth.

Harrison, J., delivered the opinion of the court.

In this case we are asked to review a judgment pronounced
against the plaintiff in error, whereby he was sentenced, in
accordance with the verdict of the jury, to confinement in the
State penitentiary for the term of eighteen years, for the mur-
der of a child seven years of age.

Taking up the assignments of error in their order, we are
of opinion that the demurrer to the indictment was prop-
erly overruled.  The ground of this objection is that the in-
dictment does not state the means whereby life was extin-
guished, or the character of the instrument or weapon with
which the homicide was committed.

The first count of the indictment charges that the prisoner

did strike, kick and beat the deceased, Mary Thompson, upon the belly, stomach and back. The second count alleges that the prisoner did strike, push, or knock the deceased down upon the floor, and that while lying upon the floor he, upon the stomach, belly, back, legs and hands of her, the said Mary Thompson, did then and there strike, beat and kick, giving to the said Mary Thompson several mortal wounds, or one mortal wound. This sufficiently sets forth the means by which the life was extinguished, and upon proof of the offense charged, there is no difficulty in giving judgment according to the very right of the case. Code, 1904, secs. 3999, 4000.

We are further of opinion that the circuit court did not err in refusing to compel the attorney for the Commonwealth to make an opening statement of the case to the jury. There is no rule of law requiring this to be done. The statute confers the right to do so, but does not make it obligatory upon either party to make an opening statement. Code, 1904, sec. 4029-a.

We are further of opinion that the testimony admitted by the court, showing that the prisoner whipped the deceased and her brothers several months before the date of the crime charged, was immaterial and without prejudice to the accused. It does not appear that the whipping on the occasion mentioned was excessive, or that the plaintiff in error, in administering the punishment, exceeded, in any manner, his lawful authority as a teacher. The evidence was irrelevant and should, properly, have been excluded, but it is clear that the prisoner was not and could not have been injured by this allusion of the witness to a previous lawful act done by him.

We are further of opinion that the court did not err in admitting the testimony of Dr. Tayloe. This witness was introduced as a medical expert. He testified that upon the *post mortem* examination of the deceased he found her bladder in a ruptured condition, and that in his opinion rupture of the bladder was the cause of her death. Witness further testified that he found an abrasion of the skin on the abdomen of the

deceased over the region of the bladder; whereupon the witness was asked: "Was the force that caused the external abrasion, in your opinion, the same force that caused the rupture of the bladder?" which question the witness answered as follows: "It is my opinion that the same force which caused the abrasion caused the rupture of the bladder."

This evidence was objected to on the ground that it was irrelevant, and because the witness was asked for an opinion which did not require the peculiar knowledge of an expert.

The subject of inquiry was one about which the medical expert could speak more advisedly than any other. Such evidence is permissible wherever peculiar skill and judgment is necessary to elucidate a particular subject. The *post mortem* had disclosed rupture of the bladder to be the cause of the death. This expert witness traces that result to a cause, saying that, in his opinion, the rupture of the bladder was produced by the same force which caused the abrasion on the abdomen. This evidence tended to throw light on the subject of inquiry, and was proper to go to the jury to aid them in reaching a conclusion. Wigmore on Evidence, Vol. 3, p. 2559, sec. 1923.

We are further of opinion that the court did not err in admitting the testimony of Doctor Chinn. This was the evidence of a medical expert, and was to the same effect as that of Dr. Tayloe. What has been said with respect to the admissibility of the latter's testimony is equally applicable here and need not be repeated.

We are further of opinion that the court did not err in admitting the evidence of the witness, Louis Thompson. This witness was a boy nine years old, and his testimony is objected to upon the ground that he was not of sufficient age, intelligence and maturity of mind to understand the nature and obligation of an oath, or to be legally responsible for his conduct.

Where a witness is objected to on the ground that his tender years make him incapable of understanding the obligation of an oath, the question of his competency is one addressed to the sound judicial discretion of the court. We have considered the test to which the competency of this witness was subjected, and are satisfied that the discretion exercised by the circuit court in admitting the evidence was not abused.

We are further of opinion that there was no error in the instructions under which the case was submitted. There was sufficient evidence before the jury to sustain the instructions, and it is admitted that they state sound propositions of law.

The last assignment of error is that the circuit court refused to set aside the verdict of the jury as contrary to the law and the evidence. The accused was a colored school teacher, twenty-four years of age. In support of the verdict the record shows that the deceased, a little negro girl seven years of age, and her two brothers, aged respectively, nine and eleven years, attended the school presided over by the prisoner as teacher; that on March 23, 1909, when the hour for recess arrived, the prisoner dismissed all of the school except the deceased and her nine year old brother; that a short while thereafter he told the brother to go out. The boy testifies that as he was going out the prisoner had his sister across his lap, whipping her with a switch; that he did not go at once to where the children were playing, but first went around to the back door of the school house and looked through a crack in the door, and saw that the prisoner had the deceased lying with her face on the floor beating her with a switch between two and three feet long and as large at the butt end as his third finger; and that the child was crying and the prisoner telling her to hush up. It appears from the evidence that when the school re-assembled the deceased, who was still in the school room, looked badly, was perspiring and trembling; that the prisoner told her that she had better move farther from the stove, and she moved to a seat by her older

brother, where she became so nauseated that she began to vomit. The prisoner told the child to go out and bathe her face and hands. When she returned, her nausea and the vomiting, at intervals, continued. She asked the prisoner if she might go to sleep; he replied that she might do anything so she got her lessons. The prisoner sent the deceased and her two brothers home in advance of dismissing the school for the day. The distance was two miles, and the deceased walked slowly and was sick on the way. The prisoner after dismissing the school overtook the deceased in his buggy, and again showed his solicitude by asking her if she felt better, and to run on and overtake her brothers. Her mother, who had been notified in advance by one of the boys that his sister was sick, came out to meet her as she approached her home, and found deceased in such a condition that she had to put her to bed at once. The evidence shows that when deceased left home the morning of the 23rd of March, 1909, for school, there was nothing the matter with her, and that when she returned that evening she was carried into the house by her mother with a number of severe bruises and abrasions upon her body, and so sick that a doctor had to be sent for that night to attend her. One of the abrasions was on the abdomen over the region of the bladder, and it was found necessary to use a catheta to carry off the urine. The doctor continued to attend the child from Wednesday morning until Sunday when she died. Two doctors performed an autopsy, which disclosed that the primary cause of death was the rupture of the bladder at the top, the top of the bladder appearing to have been knocked off; and that the rupture was large enough to admit the introduction of two fingers. A careful examination of the body at the autopsy showed a number of bruises on the body besides the abrasion on the abdomen over the region of the bladder. Both of these medical experts concur in the opinion that the bladder of the deceased was ruptured by an external blow with some blunt instrument, and that the same force which caused

the abrasion on the child's abdomen caused the rupture of the bladder, and further say that rupture of the bladder will be followed by nausea and drowsiness.

Without comment upon the evidence, it is sufficient to say, that, upon well settled principles, the verdict in this case, which is based upon it, cannot be disturbed.

The judgment complained of must, therefore, be affirmed.

*Affirmed.*